IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK L. KING, | ) | |
| Plaintiff, | ) | Civil Action No. 09-175 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| MICHAEL BARONE, et al., | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' partial motion for summary judgment [ECF No. 49] be granted. Plaintiff's excessive force and retaliation claims should be dismissed from this case. The only remaining claim is Plaintiff's contention that Defendants were deliberately indifferent to his medical needs during the time he was in the restraint chair on January 18, 2009, and January 26, 2009.

### II. REPORT

#### A. Relevant History

Plaintiff Derrick L. King is a state prisoner who at the time giving rise to this suit was incarcerated at the State Correctional Institution Forest ("SCI-Forest"), located in Marienville, Pennsylvania. In July 2009, he submitted for filing a civil rights complaint pursuant to 42 U.S.C. § 1983. [ECF No. 7.] The Court ordered him to file an amended complaint explaining the factual basis upon which he was bringing his claims because the original complaint did not explain what each defendant did. Thereafter, Plaintiff filed an amended complaint [ECF No. 8], in which he complains about two incidents, one on January 18, 2009, and the other on January 26, 2009, in which he was

1

extracted from his cell and placed in a restraint chair. On April 5, 2010, Plaintiff supplemented his claims in another amended complaint [ECF No. 41]. In that filing, he supplemented the claims he makes regarding being placed in the restraint chair on January 18, 2009. He raised a new claim that he was unlawfully retaliated against for complaining about his conditions of confinement. As Defendants to this action, Plaintiff named: Jeffery A. Beard, Secretary of the Department of Corrections; Michael C. Barone, Superintendent of SCI-Forest; Captain Repko; Officer Coleman; Officer Henretty; Officer Benson; R.N. Bell; Lt. Samson; Lt. Taylor; Officer Snyder; Sergeant Murin; Officer Gliar; Officer Wentez; Sergeant McKnight; Lt. Smith; Nurse Williams; and Nurse Douglas.

Defendants filed a motion to dismiss. [ECF Nos. 31-42.] On August 23, 2010, upon the undersigned's Report and Recommendation [ECF No. 44], the Court issued an Order [ECF No. 45] in which it granted in part and denied in part Defendants' motion to dismiss. The motion was granted as to Defendant Jeffrey A. Beard and on two of Plaintiff's claims (that Defendants subjected him to taunting, racial slurs, and verbal harassment and that they were deliberately indifferent to Plaintiff's health care needs when they denied him two adequate meals on January 18, 2009, and denied him water and one meal on January 26, 2009).

The following claims remain in this action:

1. Defendants subjected Plaintiff to excessive force and were deliberately indifferent to his well-being by placing him in the restraint chair on January 18 and 26, 2009, and by exposing him to harsh and unwarranted conditions while he was restrained in the chair; and,

2. When Plaintiff complained about his conditions of confinement, Defendants Coleman and Henretty retaliated against him by filing false misconduct reports.

Pending before the Court is Defendants' motion for partial summary judgment [ECF No. 49], an accompanying Brief [ECF No. 50], and a Statement Of Material Facts Not In Dispute [ECF No. 51.] Defendants have moved for summary judgment on the excessive force portion of Plaintiff's first claim

2

and on his retaliation claim. They do not address the portion of his claim in which he contends that the Defendants were deliberately indifferent to his medical needs while he was in the restraint chair. Plaintiff has filed his Response [ECF No. 53] and a brief in support of his opposition to summary judgment [ECF No. 54].

### B. Standard Of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a

genuine issue." Garcia v. Kimmell, 381 F.App'x 211, 213 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007). Importantly, however, in a case such as this one where there are video recordings of the incidents in question, the Court need not adopt the non-movant's version of the facts if the recording "blatantly contradict[s]" the non-movant's version "so that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007).

Because Plaintiff is proceeding *pro se*, the court is required to liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, this does not require the Court to credit his "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Thus, for example, the mere allegation that two of the Defendants' conduct was retaliatory is insufficient to establish that there is a genuine issue of material fact. Rather, the allegation must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

### C. Discussion

#### (1) Excessive Force Claim

Defendants move for summary judgment on Plaintiff's claim that he was subjected to excessive force when he was extracted from his cell and placed in the restraint chair on January 18 and 26, 2009. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. See Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). When reviewing Eighth Amendment excessive force claims, the Court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[1] Id. at 7. *De minimis* uses of physical force are excluded from constitutional recognition, provided that the use of force is not "'repugnant to the conscience of mankind.'" Whitley, 475 U.S. at 327, quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Reyes v. Chinnici, 54 F.App'x 44, 48 (3d Cir. 2002) ("[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically").

Each of Plaintiff's cell extractions were recorded and Defendants have submitted those video recordings into evidence. They contend that when those recordings are considered together with the documentary evidence that they have submitted, there can be no dispute that on each occasion at issue Plaintiff was placed in the chair for legitimate penological purposes and was not subjected to excessive force. The Court agrees.

---

[1] Whether the force applied was excessive requires the examination of several factors outlined by the Supreme Court in Whitley v. Albers, 475 U.S. 312, 321 (1986), including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. In accordance with this law, the Department of Corrections ("DOC") Use of Force Policy states that force may be used for "protection of self or others," "prevention of the inmate from self-inflicted harm," "protection of property from damage or destruction," and/or to "effect compliance with the rules and regulations when other methods of control are ineffective or insufficient[.]" [Doc. 31-1 at 42, Def's Ex. G, DC-ADM-201, "Use of Force" at 3.]

Plaintiff alleges that when he was housed in a psychiatric observation cell on January 18, 2009, Defendants Taylor and Repko approached his cell for no reason whatsoever with seven guards dressed in riot gear, cuffed him and put him in the restraint chair. [ECF No. 8, ¶¶ 14-16; ECF No. 41 at 4.] He alleges that Defendants Gliar and Murin pulled the restraint straps as tight as possible, and as a result he had difficulty breathing and seeing and he urinated and defecated on himself. Plaintiff claims that the Defendants acted with the sole purpose of inflicting pain upon him and that they ignored his pleas for relief. [Id., ¶¶ 17-18; ECF No. 41 at 4.]

Defendants have submitted the extraordinary occurrence report ("EOR") that SCI-Forest Captain A. Repko drafted and which explains what precipitated the cell extraction and the use of the restraint chair on January 18, 2009:

> [Plaintiff] was spreading feces on his cell walls, window, and [on the in-cell] camera. At 1900 when delivering medications [Plaintiff] stuck his arm out the food aperture and refused all orders to remove his arm. At 1905 [Plaintiff] broke the sprinkler head off in cell 3D-1005.

[ECF No. 31-1 at 6, Def's Ex. D, DC-121 Part #2 Form, EOR, January 18, 2009, at 2.] The videotape that Defendants have submitted confirms that feces was spread on the inside front of Plaintiff's cell window and that there was standing water all over the floor. It shows the cell extraction team conducted a verbal strip search, brought Plaintiff out of the cell (Bed # 3D 1005-01), and placed him in the restraint chair. Plaintiff remained calm at all times, as did all members of the extraction team. There is no evidence whatsoever of excessive force. After Plaintiff had been strapped in the chair, Defendant Williams, a nurse, examined him and he confirmed that the circulation was good in all four of Plaintiff's extremities. The guards then placed Plaintiff, in the restraint chair, in a different and clean cell (Bed

6

# 3D 1004-01).[2]  At the end of the video recording, Defendant Williams again confirms that the circulation in Plaintiff's extremities was good and that there were no visible injuries on him.

Defendants also have introduced documents which show that during his misconduct hearings regarding the occurrence on January 18, 2009, Plaintiff admitted to refusing to take his medicine, taking his food aperture hostage, yelling obscene language to the Corrections Officers, and "standing on his bed and popping the sprinkler head," thereby flooding his cell and other parts of the psychiatric observation unit. [ECF No. 31-1 at 32-33, Def's Ex. E, Misconduct # A639087 Paperwork; ECF No. 31-1 at 35-36, Def's Ex. F, Misconduct # A928086 Paperwork.]

Defendants' evidence further shows that on January 18, 2009, Plaintiff was placed in the chair at approximately 8:05 p.m. and removed from the chair no later than 4:00 a.m. the next morning. [ECF No. 31-1 at 6-7, Def's Ex. D, DC-121 Part #2 Form, EOR, January 18, 2009, at 2-3.]  Thus, he was in the chair for a period of approximately eight hours.  Plaintiff insists that that "is per se cruel and unusual punishment" [ECF No. 54 at 3], but he is wrong.  As Defendants note, the mere fact that Plaintiff spent that amount of time in the restraint chair does not in and of itself constitute cruel and unusual punishment.  Fuentes v. Wagner, 206 F.3d 335 (3rd Cir. 2000).  Defendants also have introduced evidence to show that, in accordance with DOC policy, Plaintiff was offered several exercise periods during the time he was in the restraint chair, but he refused every one. [ECF No. 31-1 at 101, Def's Ex. J, Grievance No. 259894 Paperwork.]

Plaintiff similarly alleges that on January 26, 2009, Defendant Taylor arrived with officers dressed in riot gear and they placed him into the restraint chair for no reason whatsoever. [ECF No. 8, ¶¶ 26-28.]  Defendants have submitted undisputed evidence to contradict that unsupported allegation.  In

---

[2]  The EOR notes that "Lt. Wentz supervised medical janitor[']s clean up of standing water in remaining POC cells and hallways.  All areas disinfected." [ECF No. 31-1 at 6, Def's Ex. D, DC-121 Part #2.]

7

that day's EOR, Captain Repko wrote that "at 1500 [Plaintiff] began standing on his sink, pounding on the ceiling and windows in an attempt to destroy his cell." [ECF No. 31-1 at 56, Def's Ex. H, DC-121 Part #2 Form, EOR, January 26, 2009, at 2.] At the misconduct hearing held regarding the incident, Plaintiff admitted to the Hearing Examiner that he was beating on his toilet (he claimed that he was doing it to keep time with the singing of another inmate). [ECF No. 31-1 at 99, Def's Ex. I, Misconduct # 391585 Paperwork, at 2.]

The videotape of that day shows, as Defendants submit, that Plaintiff was demonstrating highly agitated behavior prior to his cell extraction. For approximately 30 minutes he yelled and made verbal threats and insults at the Corrections Officer who had been dispatched to the psychiatric observation wing to videotape him while the cell extraction team was being assembled.

Plaintiff was physically calm as he was extracted from his cell and then strapped into the chair, but he did continue to swear and verbally threaten members of the extraction team and Defendant Williams. There is no evidence whatsoever of excessive force. After Plaintiff had been strapped in the chair, Defendant Williams examined him and confirmed that the circulation was good in all four of his extremities. The guards then placed Plaintiff, in the restraint chair, back into his cell. At the end of the video recording, Defendant Williams again confirms that the circulation in Plaintiff's extremities was good and that there were no visible injuries on him.

Defendants' evidence establishes that Plaintiff was in the chair on January 26, 2009, for four hours and forty-three minutes. During that time, Plaintiff accepted the offers to exercise his limbs. The EOR notes that Plaintiff "was exercised and fed at 1820 then exercised again at 2015." [ECF No. 31-1 at 56, Def's Ex. H, DC-121 Part #2 Form, EOR, January 26, 2009, at 2.]

By presenting the above-cited evidence to the Court, Defendants have satisfied their initial burden of proving the absence of evidence supporting Plaintiff's claims. The burden now shifts to

8

Plaintiff to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). He has not met that burden. He simply sets forth unsubstantiated allegations that there were no circumstances that warranted that he be placed in the restraint chair, which he refers to a "torture chair." [ECF No. 53 at 2.]

In sum, all of the above undisputed evidence demonstrates that Plaintiff was placed in the restraint chair on both January 18, 2009, and January 26, 2009, for legitimate penological interests as opposed to some malicious or sadistic reason on the part of Defendants. Defendants have satisfied their burden of showing that there is no genuine issue of material fact as to whether there was an Eighth Amendment violation when Plaintiff was extracted from his cell and placed in the restraint chair on each date in question.

Accordingly, summary judgment should be entered in favor of Defendants on Plaintiff's Eighth Amendment excessive force claim.

### (2) Retaliation Claim

In his second claim, Plaintiff alleges that Defendants Coleman and Henretty filed false misconduct reports (Misconduct Nos. A639087 and A928086) in retaliation for his making complaints about his mistreatment. [ECF No. 41, ¶¶ 4-10, 19.] This claim invokes the protections of the First Amendment. In this regard, it is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under § 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a

substantial motivating factor in the state actor's decision to take the adverse action. See e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

If Plaintiff proves these three elements, the burden shifts to Defendants to prove that they would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

In Misconduct No. A639087, Plaintiff was charged with two Class I misconducts, specifically, #33: "using abusive, obscene or inappropriate language to an employee," and #35, "refusing to obey an order." In the Misconduct Report, Henretty wrote:

> On [January 18, 2009] this officer witnessed [Plaintiff] refuse to take his medication and took his food aperture hostage. [Plaintiff] refused a direct order to release his arm from food aperture. [Plaintiff] yelled obscene language at the nurse and officers.

A video hearing was held on the Misconduct Report on January 20, 2009, and during the hearing *Plaintiff pleaded guilty to both charges*. [ECF No. 31-1 at 32-33, Def's Ex. E, Misconduct No. A639087 Paperwork.]

In Misconduct No. A928086, Plaintiff's was charged with two Class I misconducts, specifically, #35 "refusing to obey an order," and #38 "destroying, altering, tampering with or damaging property. In the Misconduct Report, Henretty wrote:

> On [January 18, 2009] this officer gave [Plaintiff] an order to quit standing on [his] bed and leave the light fixture alone. [Plaintiff] then broke the sprinkler head unit off the ceiling of his cell.

A video hearing was held on the Misconduct Report on January 20, 2009, and during the hearing *Plaintiff pleaded guilty to charge #38.* With respect to charge #35, he *"acknowledged standing on his bed and popping the sprinkler head. He stated that if an order was given, he wouldn't have heard it."* The hearing officer sanctioned Plaintiff for committing the misconducted charged at #38, and dismissed the charge at #35. [ECF No. 31-1 at 35-36, Def's Ex. F. Misconduct No. A928086 Paperwork.]

Because Plaintiff pleaded guilty to both charges contained in Misconduct No. A639087 and one of the charges contained in Misconduct No. A928086 (as well as admitting that he was interfering with the sprinkler in his cell), he cannot satisfy the third element of a *prima facie* case of retaliation: that his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him. For this same reason, Defendants also have satisfied their burden of showing that there is no genuine issue of fact as to whether the misconducts would have been issued absent the protected conduct for reasons reasonably related to a legitimate penological interest. Rauser, 241 F.3d at 334. That is because:

> [w]ith respect to his allegations that the Defendants issued a false misconduct report, the filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as prohibited "retaliation" *unless the report is, in fact, false. In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance.* See Harris-Debardelaben v. Johnson, 121 F.3d 708, 1997 WL 434357, at *1 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.), cert. denied, 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilty of a prison rule violation based on some evidence "essentially

11

> checkmates [the] retaliation claim."), cert. denied, 515 U.S. 1145, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995). See also Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); Allah v. Al-Hafeez, 208 F.Supp.2d 520 (E.D.Pa. 2002).

Williams v. Sebek, No. 05-cv-1203, 2008 WL 859006, *8 (W.D. Pa. Mar. 31, 2008) (emphasis added), appeal dismissed as frivolous, 299 F.App'x 104 (3d Cir. 2008).

Accordingly, summary judgment should be entered in favor of Defendants on Plaintiff's retaliation claim.

### III. CONCLUSION

It is respectfully recommended that Defendants' partial motion for summary judgment [ECF No. 49] be granted. Plaintiff's excessive force and retaliation claims should be dismissed from this case. The only remaining claim is Plaintiff's contention that Defendants were deliberately indifferent to his medical needs during the time he was in the restraint chair on January 18, 2009, and January 26, 2009.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: August 4, 2011

cc: The Honorable Sean J. McLaughlin

    Notice by ECF to counsel of record for Defendants and by U.S. Mail to:

    Derrick L. King
    GK1142
    SCI Dallas
    Drawer K, Follies Road
    Dallas, PA 18612-0286